[ECF No. 48]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SAMUEL J. SERO, et al., | |
| Plaintiffs, | |
| v. | Civil No. 22-2801 (RBK/EAP) |
| TRICAM INDUSTRIES, INC., et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiffs' Motion to permit destructive testing of the subject ladder in this products liability case. *See* ECF No. 48. The Court has received Defendants' opposition brief, ECF No. 56, and Plaintiffs' reply brief, ECF No. 61. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow, Plaintiffs' motion to compel destructive testing is **GRANTED IN PART AND DENIED IN PART**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 19, 2019, Plaintiff Samuel J. Sero ("Sero") purchased a Gorilla Ladder from Defendant Home Depot U.S.A., Inc. *See* Complaint ("Compl."), ECF No. 1-1, ¶ 7. According to the Complaint, on June 6, 2020, Sero attempted to use the ladder at his home in Strathmere, New Jersey. *Id.* ¶ 8. While Sero climbed the ladder in its extended position, "the side frame sheared, causing the ladder to collapse and eject Mr. Sero, throwing him to the ground, resulting in serious injuries." *Id.* ¶ 9.

Plaintiffs filed this action in state court on April 14, 2022, against Defendant Tricam Industries, Inc., which "designed, manufactured, marketed, supplied, and/or distributed" the ladder, and Defendant Home Depot U.S.A., Inc. for supplying and/or distributing the ladder to Plaintiffs in an allegedly unfit and unsafe condition. *Id.* ¶¶ 4, 10, 16, 18. On May 13, 2022, Defendants removed this matter to this Court, ECF No. 1, where the parties have been engaged in discovery.

On August 31, 2022, the parties conducted an inspection of the ladder, as well as Plaintiff's home. Plaintiffs' Memorandum in Support of Plaintiffs' Motion ("Pls.' Mem."), ECF No. 48, at 5. Among other things, the parties visually inspected the ladder, photographed it, and took measurements. *Id.* Thereafter, on November 1, 2022, Plaintiffs sent a proposed protocol for destructive testing of the ladder to Defendants. *Id.*; Certification of Counsel Erica Domingo ("Domingo Certif."), Ex. D. Plaintiffs' metallurgical expert, Frederick C. Anderson, P.E., drafted the protocol. Pls.' Mem. at 5; Domingo Certif., Ex. A (Laboratory Examination Protocol). On November 3, 2022, Defendants responded by objecting to any destructive testing. Pls.' Mem. at 5; Domingo Certif., Ex. E. The parties continued to confer in an effort to resolve the dispute. Pls.' Mem. at 5-6.

On November 22, 2022, Plaintiffs submitted a letter to the Court identifying the dispute over destructive testing of the ladder. ECF No. 27. Defendants responded, ECF No. 29, and the Court addressed the dispute during a status conference held on December 6, 2022. ECF No. 30. The Court gave the parties an opportunity to meet and confer about the issue; however, on January 24, 2023, Plaintiffs submitted a letter to the Court indicating that the parties had reached an impasse. ECF No. 35. The Court held a discovery dispute conference on February 14, 2023, and

issued an Order granting Plaintiffs leave to file a motion permitting destructive testing of the subject ladder. ECF No. 39.

On March 10, 2023, Plaintiffs filed the present motion. ECF No. 48. Defendants filed opposition on March 20, 2023, ECF No. 56, and with the permission of the Court, Plaintiffs filed a reply on April 4, 2023, ECF Nos. 59, 61.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 34(a)(1) permits a party to inspect, copy, test, or sample any tangible things that involve matters within the scope of Rule 26(b). Rule 26(b) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Several courts have recognized that production of 'tangible things' for purposes of destructive testing falls under the scope of Rule 34." *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 613 (D. Md. 2006) (citing cases). A party may bring a motion to compel if the opposing party "fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).[1]

The decision to permit destructive testing is within the Court's discretion. *See Rapchak v. Freightliner Custom Chassis Corp.*, No. 13-1307, 2014 WL 4169393, at *4 (W.D. Pa. Aug. 20, 2014) (citations omitted); *Ramos v. Carter Express Inc.*, 292 F.R.D. 406, 408 (S.D. Tex. 2013) (citation omitted). To make that determination, "the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the

---

[1] As Plaintiffs note in their briefing, Plaintiffs do not require production of the ladder because the ladder is in their expert's possession. *See* Pls.' Mem. at 5, 11; Domingo Certif., Ex. A at 1. Instead, they seek an Order permitting destructive testing, which will irreversibly alter or destroy the ladder. As such, Plaintiffs' motion may be more properly characterized as one for a protective order under Rule 26(c). *See Mirchandani*, 235 F.R.D. at 613. For purposes of the Court's analysis, however, this is a distinction without a difference because "[w]hether the motion is made under Rule 34 or Rule 26 . . . the applicable standard for considering [the] proposed testing remains the same." *Id.*

3

burdens and dangers created by the inspection." *Krekstein v. McDonald's Corp.*, 341 F.R.D. 575, 578 (E.D. Pa. 2022) (internal quotation marks and citations omitted). In determining whether to permit destructive testing, several courts have balanced the following factors:

> 1) [w]hether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) [w]hether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) [w]hether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) [w]hether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Mirchandani*, 235 F.R.D. at 614; *see Glennon v. Wing Enters., Inc.*, No. 10-324, 2010 WL 4782773, at *12 (D.N.J. Nov. 17, 2010); *see Ramos*, 292 F.R.D. at 408 & n.2 (collecting cases). The moving party bears the burden of establishing that destructive testing is appropriate under the circumstances. *Anaya v. Tricam Indus., Inc.*, No. 18-1045, 2019 WL 5850554, at *2 (W.D. Tex. Sept. 19, 2019) (citing *Campbell v. Pirelli Tire, LLC*, No. 12-21153, 2013 WL 12092518, at *3 (S.D. Fla. Feb. 1, 2013)).

## DISCUSSION

### I. Proposed Destructive Testing

According to Plaintiffs, the ladder failed in two respects: (1) Rail Lock Mechanism: the rivets holding the locking mechanism on one side of the ladder pulled out of the aluminum side rail; and (2) Fractured Rail: the area where the cross-beam support meets the aluminum side rail split and fractured. Pls.' Mem. at 6; Domingo Certif., Ex. A and Ex. B (Destructive Examination Justification). Plaintiffs argue that destructive testing is necessary to determine whether the ladder failed due to design or manufacturing defects, because non-destructive examinations of the ladder were inconclusive. Pls.' Mem. at 6; Domingo Certif., Ex. B. Plaintiffs' expert identified two areas

4

for testing: (1) the rivets holding one side of the locking mechanism; and (2) the area where the cross-brace meets the aluminum side rail. Pls.' Mem. at 6.

As to the rivets, Plaintiffs propose two tests—metallographic analysis using a scanning electron microscope ("SEM") and chemical analysis, both of which have no non-destructive substitute. Domingo Certif., Ex. B at 3-4. First, Plaintiffs want to remove two fractured rivets and two undamaged rivets from the locking mechanism of the ladder and compare them using microscopy. *Id.* at 3. This will provide information about how the rivet was manufactured, installed, and fractured. *Id.* at 3-4. According to Plaintiffs' expert, an effective comparison that will "assist in the determination of the cause of the fracture," requires two destructive processes: (1) cutting the body of the locking mechanism; and (2) cleaning the fractured rivets to remove oxides and debris. *Id.* at 3. Second, Plaintiffs request a chemical analysis to determine whether the rivets were manufactured according to the relevant specifications. *Id.* at 4.

As to the aluminum side rail, Plaintiffs request tensile testing to determine the strength of the material, as well as the same metallographic and chemical testing they want to perform on the rivets. *Id.* Each test will require "sectioning the rail . . . to remove the fracture surfaces" to help determine whether the rail was manufactured according to specifications. *Id.*

## II.   Analysis

Plaintiffs argue each *Mirchandani* factor weighs in favor of destructive testing. *See* Pls.' Mem. at 13-14. Defendants claim that the proposed testing is unnecessary and overbroad, and that less destructive means can produce the same results. Defendants' Response to Plaintiffs' Motion to Compel Destructive Testing ("Defs.' Resp."), ECF No. 56, at 1. Because each *Mirchandani* factor favors destructive metallographic and chemical testing, but Plaintiffs agree that a feasible

non-destructive alternative to tensile testing exists, the Court will grant Plaintiffs' Motion in part and deny it in part.

### 1. Whether the Proposed Testing is Reasonable, Necessary, and Relevant

To establish that the requested testing is reasonable, necessary, and relevant, the movant must have "a hypothesis in the first place" as to what destructive testing could reveal. *Campbell*, 2013 WL 12092518, at *2. Although "definitive proof that [movants'] hypothesis will prove correct" is not required, the evidence sought must "do more than strengthen an already established claim or defense" and cannot merely "bolster an expert opinion or . . . [produce] other potentially intriguing, albeit irrelevant, information." *Mirchandani*, 235 F.R.D. at 615. To succeed, the movant must show that the evidence is "integral to proving" their theory of the case. *Id.*

Plaintiffs assert that their proposed testing is reasonable, necessary, and relevant because it is the only way to pinpoint the source of the ladder's alleged failures. Pls.' Mem. at 13. The Court agrees. Plaintiffs' expert hypothesizes that either a design defect or manufacturing defect caused the incident. *See* Pls.' Mem. at 1, 6-7, 13; *see also* Domingo Certif., Ex. B at 3-4. He further stated that prior non-destructive testing was inconclusive and that the exact origin of the failure cannot be determined without destructive testing. Domingo Certif., Ex. B at 3.

Defendants argue that the proposed testing is unreasonable because Plaintiffs have provided no clear legal theory, defect theory, or hypothesis they want to prove using the test results. Defs.' Resp. at 4-6. Plaintiffs respond by stating they have identified two points of failure in the ladder—the rivets in the locking mechanism and the aluminum side rail's connection with the cross-brace—but without destructive testing, Plaintiffs cannot know whether the failures were a result of a design or a manufacturing defect. Pls.' Reply Letter Brief ("Pls.' Reply"), ECF No. 61, at 1-2.

The Court finds that Plaintiffs' hypothesis is adequate and justifies destructive testing. The court's findings in *Glennon v. Wing Enterprises, Inc.*, 2010 WL 4782773 (D.N.J. Nov. 17, 2010), are instructive. There, the plaintiff suffered significant injuries when a ladder he had purchased collapsed while he was using it. *Id.* at *1. As in this case, the plaintiff's expert stated that "'the root cause of failure cannot be determined at this time without performing a comprehensive metallurgical evaluation and review of the manufacturing process.'" *Id.* at *15. The court found this was a sufficient hypothesis to permit destructive testing. *Id.*; *see also Mirchandani*, 235 F.R.D. at 614 (finding a testing protocol necessary and reasonable because plaintiffs "theorize[d] that, as the result of either a manufacturing or design defect, one or more of the locking bolts were too weak to withstand compressive forces exerted upon . . . the ladder."). Here, Plaintiffs seek metallurgical tests to determine if the ladder's failures resulted from flaws in design or manufacture. *See* Pls.' Reply at 1-2. Accordingly, this Court finds Plaintiffs' hypothesis sufficient to authorize destructive testing.

Defendants also rely on *Campbell v. Pirelli Tire, LLC*, No. 12-21153, 2013 WL 12092518 (S.D. Fla. Feb. 2, 2013) and *Anaya v. Tricam Indus., Inc.*, No. 18-1045, 2019 WL 5850554 (W.D. Tex. Sept. 19, 2019), in support of their argument that Plaintiffs have failed to explain the hypothesis they hope to prove with destructive testing. Defs.' Resp. at 5-6. However, these cases are distinguishable because the testing proposals provided significantly less information than Plaintiffs' proposal. For example, in *Campbell*, the court found destructive testing was unnecessary because the movants did not explain the specific tests to be performed, how the testing would determine the type of defect, or how the findings would assist the plaintiffs in proving the existence of a defect. 2013 WL 12092518, at *3. Similarly, the court in *Anaya* rejected an argument that destructive testing was necessary because the plaintiff did not respond to the

7

defendants' contention that two of the proposed tests could be performed without destroying the subject matter. 2019 WL 5850554, at *2. In contrast, Plaintiffs' expert here explains the testing that will be done, why previous non-destructive testing has not worked, why alternative methods are insufficient, and how the findings will be relevant to determining whether a manufacturing or design defect caused the alleged failure. *See* Domingo Certif., Ex. A and Ex. B. Accordingly, the Court finds that Plaintiffs have provided a sufficient hypothesis to establish that the testing is integral to their legal claims.

Defendants also argue that two proposed tests—analysis of the in-tact rivets and the tensile testing—are overly destructive. Defs.' Resp. at 3-4. Defendants' expert professional engineer, Dr. Ellen Wright, asserts that the comparative rivet testing can be performed using design documents that provide the aluminum specifications in lieu of the in-tact rivets. *Id.* at 4; Affidavit of Ellen Wright ("Wright Aff."), ECF No. 56-1, ¶ 7. Defendants also claim the proposed tensile testing would require "a significant amount of material from multiple locations," and as such, Plaintiffs should first perform microhardness measurements, which would require much less material from the ladder. Defs.' Resp. at 4; Wright Aff. ¶ 9.

The Court agrees with Plaintiffs regarding the rivet testing. Plaintiffs have adequately explained why testing undamaged areas is required to obtain relevant information about the cause of the alleged failures. Plaintiffs' case hinges on whether a manufacturing or design defect in the ladder caused Sero's injuries. According to Plaintiffs, Defendants have claimed they do not know who manufactured the subject rivets and have not produced discovery relating to the rivets' composition or specifications. Pls.' Reply at 2. Thus, Plaintiffs contend that comparing the fractured and unfractured rivets is the only means of determining whether the failed rivets were part of a bad batch or whether all the ladders were manufactured with substandard materials. *Id.*

Information about the material composition/specifications of the fractured and in-tact rivets can produce relevant information to support Plaintiffs' hypothesis. Thus, testing of the non-fractured rivets as a point of comparison is necessary to advance Plaintiffs' case.

As to the tensile testing, Plaintiffs concede that hardness testing, while less accurate, may offer the same information as tensile testing, and that they are willing to postpone tensile testing to conduct hardness testing first. Pls.' Reply at 3. Accordingly, Plaintiffs should conduct hardness testing instead of the proposed tensile testing, and if necessary, file a renewed motion for tensile testing.

Finally, Defendants argue that Plaintiffs have not provided pass-fail criteria, which is crucial to determine the technical merits of Plaintiffs' testing protocol. Defs.' Resp. at 6-7. Defendants rely on *Campbell* and *Anaya* as examples of cases in which the movants did not adequately explain their pass-fail criteria. *Id.* Defendants argue that as in *Campbell* and *Anaya*, Plaintiffs' protocol lacks sufficient pass-fail criteria, which prevents them from determining whether Plaintiffs' proposed testing is scientifically valid or recognized by the scientific community. *Id.*

Once again, *Campbell* and *Anaya* are distinguishable. The court in *Campbell* noted that the protocol there did not include any accepted scientific methods for testing or information about how testing would be relevant to showing a design or manufacturing defect. *See* 2013 WL 12092518, at *3. Similarly, the court in *Anaya* held that the plaintiffs "fail[ed] to establish how the proposed destructive testing would be probative of a manufacturing defect." 2019 WL 5850554, at *2. Here, Plaintiffs' expert explains how the tests will be conducted, what machinery will be used, the reason for the testing, and how the results will be probative of a design or manufacturing defect. Domingo Certif., Ex. A at 1-3. He also states that the proposed testing

9

meets the appropriate industry standards. *Id.*, Ex. B at 5. For example, Plaintiffs' expert states that he will examine the rivets using SEM and Energy Dispersive Spectroscopy ("EDS"), both of which are generally accepted scientific methods of metallurgical failure analysis. *Id.*, Ex. A at 3, Ex. B at 5; Pls.' Mem. at 13-14; *see also Glennon*, 2010 WL 4782773, at *15 (finding that the proposed testing was reasonable because the steps set forth in the protocol "are typical for failure analysis and are widely accepted as industry standard and practice"). Plaintiffs' expert also states that tensile testing, which Plaintiffs have agreed to pause while trying non-destructive methods, would be performed using the ASTM E8 standardized pass/fail criteria approved in *Glennon*. Domingo Certif., Ex. A at 3; Pls.' Reply at 3; *see also Glennon*, 2010 WL 4782773, at *8, *15. Thus, Plaintiffs' testing is supported by satisfactory pass-fail criteria to show technological merit. As such, the Court finds that the proposed destructive testing is reasonable, necessary, and relevant and therefore, this factor supports destructive testing.

  **2.**  **Non-Movant's Ability to Present Evidence at Trial and Possible Prejudice to Non-Movant**

To assess this prong, the Court must determine "whether the deprivation of the ability to make a live presentation to the jury as opposed to showing the jury a videotaped presentation is enough to outweigh the benefits of providing plaintiffs the ability to test." *Mirchandani*, 235 F.R.D. at 616. However, "a material change in the appearance of the object, even when the non-movant plans to present the object at trial, is insufficient to categorically prohibit destructive testing." *Id.*

Here, Plaintiffs argue that Defendants will not be prejudiced by destructive testing because both Plaintiffs and Defendants have photographed and examined the ladder and its components in its current condition, and because Plaintiffs have produced photos of the ladder on the date of the incident. *See* Pls.' Mem. at 13. In response, Defendants argue that their ability to present evidence

10

at trial will be hindered by destructive testing because (1) they intend to introduce the ladder as an exhibit at trial to show the jury the ladder as it appeared after Sero's fall; and (2) they cannot fully replicate the ladder through two-dimensional photographs or by showing the ladder after destructive testing. Defs.' Resp. at 7. Furthermore, because tensile testing would remove significant material from multiple locations, it would impair Defendants' ability to present the ladder as an exhibit at trial and could possibly mislead the jury. *Id.* at 7-8.

The Court finds that although destructive testing will alter the ladder, Defendants' ability to present evidence at trial will not be hindered and thus, they will not be unduly prejudiced by destructive testing. In *Mirchandani*, the defendants argued they would be prejudiced because destructive testing would prevent them from demonstrating at trial that a person could climb up the subject ladder without issue. 235 F.R.D. at 616. The court rejected that argument because "even after the destructive testing, defendants will still have the opportunity to present their defense to the jury by videotaped presentation and the testimony of their experts who have examined the ladder at length." *Id.*

Here, as in *Mirchandani*, both parties have photographed the ladder; their experts have examined the ladder and its components in its damaged condition; and they each possess photographs of the ladder taken on the date of the incident.[2] Pls.' Mem. at 13. These alternatives are sufficient to show the jury the ladder's condition after Sero's fall, as Defendants wish to do.

---

[2] Defendants also cite *Anaya* in support of their argument. Defs.' Resp. at 7. There, the court stated that diagrams and photographs of the subject product were "inadequate substitutes" to presentation at trial because the "potential prejudice to Defendants' case weighs particularly heavy given that Plaintiff has not shown why non-destructive methods are inadequate . . . ." *Anaya*, 2019 WL 5850554, at *2. Here, in contrast, Plaintiffs' expert has explained in detail why non-destructive methods would not be effective to test the ladder. *See* Domingo Certif., Ex. B.

The Court finds that Plaintiffs' proposed testing will not unduly prejudice Defendants; accordingly, this second factor supports destructive testing.

### 3. The Existence of Less Prejudicial Alternative Methods of Obtaining the Evidence Sought

"The third area of inquiry is whether there are any non-destructive alternative methods of testing." *Mirchandani*, 235 F.R.D. at 616. While "[t]here do not appear to be any cases that have turned on the validity of alternative non-destructive methods of obtaining the evidence sought . . . this prong encourages the party opposing destructive testing to suggest less destructive and less prejudicial counter-proposals . . . ." *Id.*

Plaintiffs assert that no less prejudicial or invasive means exist to obtain evidence of the material composition of the ladder.[3] Indeed, Plaintiffs' expert states that the "proposed protocol is typical for a metallurgical failure analysis and consistent with accepted industry practice." Domingo Certif., Ex. B at 5; Pls.' Mem. at 13-14. Defendants, however, contend that sectioning rivet holes and the fractured rail for examination by optical microscopy is unnecessary. *See* Wright Aff. ¶ 8; Defs.' Resp. at 4. According to Defendants, Plaintiffs could obtain higher magnification optical imaging by using a portable optical microscope and/or photography with zoom lenses, such as macro-photography, which would allow for optical imaging without destructive sectioning. Wright Aff. ¶ 8. Plaintiffs' expert explains, however, that previous non-destructive examination of the exposed portion of the fractured rivets with a portable stereo microscope was inconclusive as to the cause of the ladder's failure. Domingo Certif., Ex. B at 3-4; Pls.' Mem. at 8-9. That is because the magnification and resolution of a stereo microscope are insufficient to determine the morphology of the fracture surface. Domingo Certif., Ex. B at 3-4. As to the fractured rail,

---

[3] Plaintiffs concede that hardness testing, although less accurate, could substitute for the tensile testing. Pls.' Reply at 3. As stated above, the Court will deny the Motion as to the tensile testing without prejudice, pending the performance of microhardness experiments.

12

Plaintiffs' expert states "[g]iven the size and geometry of the rail, it is not physically possible to examine the fracture surfaces in-situ with standard laboratory equipment." *Id.*, Ex. B at 4. Given the inconclusive results of non-destructive testing, and the logistical challenges of testing the rail because of its size, the Court finds that removing the rivets and the fractured rail to conduct destructive testing is reasonable.

In addition, Plaintiffs would like to conduct a chemical analysis of the fractured rivets and the fractured rail. Plaintiffs' expert states that no equivalent non-destructive test with sufficient accuracy exists. *Id.*, Ex. B at 4. Defendants have not challenged Plaintiffs' chemical testing in their opposition. The Court, being satisfied with Plaintiffs' expert's explanation as to the insufficiency of alternative non-destructive methods, finds that this third factor favors destructive testing.

### 4. The Adequacy of Safeguards Minimizing Prejudice to the Non-Movant, Particularly the Non-Movant's Ability to Present Evidence at Trial

With respect to the fourth factor, courts consider whether safeguards exist to minimize prejudice, including:

> (1) adequate opportunities for the [non-movants] to photograph or otherwise record the character and condition of the [object to be tested] prior to the destructive testing; (2) notice to the [non-movants] of the time, place, and exact manner of the destructive testing; (3) reasonable opportunity for the [non-movants] and their experts to observe and record the procedures involved in the destructive testing; (4) the right of the [non-movants] to conduct or participate in similar tests with a portion of the sample to be tested; (5) provision for discovery of the results of the [movant's] tests; and (6) allocation of costs as justice may require.

*Mirchandani*, 235 F.R.D. at 617 (alterations in original) (citation omitted). Furthermore, courts have permitted non-movants to "videotape or photograph the destructive testing as they deemed appropriate . . . subject to a finding that such recording unfairly compromised the testing" and have given non-movants "leave to depose the movant's experts about the testing procedures and results

13

of the tests" along with "the opportunity to show cause why any other persons substantially involved in the performance of the testing should also be deposed." *Id.* (internal quotation marks and citations omitted). Courts have also imposed an affirmative duty on movants "to fully videotape each test from its inception to its conclusion." *Id.* (internal quotation marks and citations omitted).

Plaintiffs argue that the proposed protocol provides adequate safeguards minimizing any potential prejudice to Defendants. Pls.' Mem. at 14. Defendants had the opportunity to photograph and measure the ladder and will be able to do so at the time of destructive testing. *Id.* Plaintiffs have proposed permitting Defendants to attend or participate in the destructive testing by taking their own samples at a mutually convenient time. *Id.* Defendants argue that Plaintiffs have not proposed adequate safeguards because the testing will cause them prejudice. Defs.' Resp. at 8.

The Court finds that adequate safeguards exist to protect Defendants from undue prejudice. As previously stated, Defendants have had the opportunity to photograph and measure the ladder and, as Plaintiffs assert, Defendants may do so again prior to destructive testing. Pls.' Mem. at 14. Defendants will also be permitted to attend the destructive testing and participate by taking their own samples. *Id.* The Court further permits Defendants to videotape the ladder prior to and during destructive testing and to perform taped demonstrations with the ladder prior to testing, if they so choose. Accordingly, the Court finds that this fourth factor supports destructive testing.

## CONCLUSION AND ORDER

The Court finds that all four *Mirchandani* factors support destructive testing in this case. Ultimately, the benefits of destructive testing outweigh any prejudice Defendants may experience, and Defendants may take any of the steps outlined above to decrease prejudice from the destruction of the ladder. Plaintiffs are therefore permitted to conduct the requested destructive testing.

Therefore, it is on this **28th** day of **September 2023**;

**ORDERED** that Plaintiffs' Motion to compel destructive testing, ECF No. 48, is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that Plaintiffs' request to perform metallographic and chemical testing on the subject ladder is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' request to perform tensile testing on the subject ladder is **DENIED WITHOUT PREJUDICE**, renewable upon performance of hardness testing and a determination that the results are insufficient to determine a theory of liability; and it is further

**ORDERED** that no later than **October 13, 2023**, the parties shall provide the Court with a stipulated consent order regarding a framework for adequate safeguards for destructive testing and a date for such testing to be completed. The Court will adjust the case management schedule upon receipt of the consent order.

s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Robert B. Kugler, U.S.D.J.